IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JIMMY BERRY,

      Plaintiff,

v.                                  CASE NO. 2:11-cv-00134

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.  The parties have submitted briefs in support of their positions.

The plaintiff, Jimmy Berry (hereinafter referred to as "Claimant"), filed an application for SSI on August 27, 2007, alleging disability beginning July 4, 2004, due to a "car accident/nerve damage in neck/can't use right hand." (Tr. at 140.)  The claim was denied initially and upon reconsideration.  (Tr. at 52-56, 59-61.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 62.)  The hearing was held on October 15, 2008, before the Honorable Rosanna D'Alessio (Tr. at 20-41.)  By decision dated January 9, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 7-19.)  The ALJ's decision became the final decision of the Commissioner on January 4, 2011, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-5.)  On

March 2, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2008).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.   Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and

2

mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the date on which the application was filed. (Tr. at 9, 11.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral and cervical radiculitis, borderline intellectual functioning, pain disorder, and alcohol abuse in early partial remission.  (Tr. at 11.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 12-14.)  The ALJ then found that Claimant has a residual functional capacity to perform a range of work between the sedentary and light levels, reduced by exertional and nonexertional limitations including limitations in remembering, understanding and/or carrying out detailed and complex instructions.  (Tr. at 14.)  The ALJ decided that Claimant cannot perform his past relevant work.  (Tr. at 17.)  After hearing testimony of a vocational expert, the ALJ concluded that Claimant could perform jobs such as pager, nut sorter, and jewelry polisher, which jobs exist in significant numbers in the national and regional economy.  (Tr. at 18.)  On this basis, benefits were denied.  (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson,

substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 46 years old at the time of the administrative hearing. (Tr. at 24.) Claimant graduated from high school, although he was in special education classes. (Tr. at 24.) Claimant's past relevant work consisted of various jobs in the logging industry. (Tr. at 36.)

Claimant's Challenge to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant does not meet Listing 12.05C. (Pl.'s Br. at 1.) He points out that in 1977, Claimant's Full Scale IQ was measured as 70, and that he has another physical or other mental impairment imposing an additional and

4

significant work-related limitation of function.  Id.

The Commissioner argues that Claimant, who functions in the borderline intellectual functioning range, does not meet or equal Listing 12.05C.  (Def.'s Br. at 8-14.)  The Commissioner asserts that the 1977 IQ test is not a valid and current measure of his IQ, that his 2008 IQ test scores were all above 70, and that he has not  shown the requisite "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [before age 22]," to meet the criteria of Listing 12.05C.  Id.

Listing 12.05C

In order to meet the criteria of Listing 12.05C, the regulations require that Claimant must satisfy the introductory language of Listing 12.05C, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2008); see also § 12.00A (stating that for Listing 12.05, claimants must satisfy the diagnostic description in the introductory paragraph and any one of the four sets of criteria).  In addition to meeting the introductory language, Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2008).

On September 19, 1977, when Claimant was age 15 years plus almost two months, he was tested by Kathy Durbin, a certified school psychologist.  (Tr. at 197-201.)  She administered the WISC-R [Wechsler Intelligence Scale for Children-Revised] IQ test to him

and he scored 73 (Verbal), 71 (Performance) and 70 (Full Scale).  (Tr. at 197.)  Ms. Durbin indicated that the test results appeared to be an accurate measure within the normal standard error limits and were consistent with Claimant's permanent record data.  (Tr. at 199-200.)  She concluded that Claimant was "currently functioning in [the] borderline range."  (Tr. at 200.)  She recommended that he be placed in the EMR [Educable Mentally Retarded] Resource Room at his high school, which recommendation was followed.  (Tr. at 111, 200.)

The Commissioner argues that the 1977 IQ Full Scale score should not be considered to be valid, based on the regulation found at 20 C.F.R. § [1]12.00(D)(10), and citing <u>Harrold v. Astrue</u>, 323 Fed. Appx. 114 (3d Cir. 2009).  (Def.'s Br. at 9.)  The regulation quoted by the Commissioner applies to the Listings which are used for child applicants, not adults.  In fact, as noted in <u>Harrold</u>, <u>id.</u> at 116, the Social Security Administration "never use[s] the listings in part B [Child Listings] to evaluate individuals who are age 18 or older."  20 C.F.R. § 416.925(b)(2).  Accordingly, the court declines to evaluate the validity of the 1977 IQ test by considering the Child Listing language.

The regulations applicable to adult applicants contain provisions relating to intelligence tests; they are found at 20 C.F.R. § 12.00D.6.  A comparison of Ms. Durbin's report with the regulations compels the court to conclude that the 1977 Full Scale test score is valid.  Ms. Durbin commented that she believed the scores to be valid and consistent with Claimant's permanent record data.  She used the Wechsler series.  The Commissioner's regulation specifies that the lowest score is used in conjunction with 12.05. § 12.00D.6.c. Based on the IQ score and Claimant's school records, including his placement in the EMR room, the court finds that Claimant has satisfied the introductory language of Listing 12.05

6

and has shown that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.* the evidence demonstrates or supports onset of the impairment before age 22."

The Listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ found that Claimant has physical impairments which are "severe" (lumbosacral and cervical radiculitis and pain disorder). In Luckey v. United States Dep't of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989) (citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985)), the Fourth Circuit held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. A "severe" impairment is one "which significantly limits [one's] ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c) (2008).

In Luckey, the Court ruled that

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the [Commissioner] has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The [Commissioner's] finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

Id. Thus Claimant meets the second prong of Listing 12.05C.

On April 7, 2008, about six months after applying for SSI, and when Claimant was 45 years old, he underwent a consultative evaluation by licensed psychologist Lester Sargent. That report contains the following pertinent information:

- Claimant served in the United States Army from 1980 to 1983 and was honorably discharged.
- Claimant was not retained in any grades in school. While in high school, he obtained

vocational training in auto mechanics.
- During his employment in the timber industry, he was a cutter, dozer operator, skidder operator, among other duties.
- Claimant's scores on the WAIS-III [Wechsler Adult Intelligence Scale, Form III] were 72 (Verbal), 76 (Performance) and 72 (Full Scale). The Full Scale score "suggests the borderline range of intellectual abilities." The test results appeared "to represent a reasonably **valid** and accurate estimate of his skills and abilities.
- Claimant's neuropsych screening results were "Average" for level of consciousness, orientation, comprehension, repetition, naming, constructions, calculations and judgment. His results were "Mild Impairment" for attention, memory and similarities. The results were deemed to be **valid**.
- Claimant's diagnosis on Axis II was Borderline Intellectual Functioning, because his Full Scale score fell between 71 and 84.
- Claimant appeared to be capable of managing his funds should an award be made, although it was noted that his wife manages the family finances.

(Tr. at 313-19.) (Emphasis in the original.)

Rosemary Smith, Ph.D, a non-examining agency consultant, reviewed the psychological records. She completed a Psychiatric Review Technique, indicating that Claimant has borderline intellectual functioning. (Tr. at 322.) She opined that he has mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. at 331.) She wrote as follows:

> CLAIMANT APPEARS CREDIBLE. HIS ADL'S APPEAR LIMITED DUE TO PHYSICAL PROBLEMS. IN THE AFR FORM, HE DID NOT CHECK MENTAL LIMITATIONS. HE DOES HAVE BIF WHICH WOULD AFFECT HIS ABILITY TO LEARN AND PERFORM COMPLEX TASKS. SEE MRFC [Mental Residual Functional Capacity Assessment].

(Tr. at 333.) In the MRFC, Dr. Smith rated Claimant as "Not Significantly Limited" in all functions save two. She indicated that Claimant was "Moderately Limited" with respect to his ability to understand and remember detailed instructions and his ability to carry out detailed instructions. (Tr. at 335-36.) She concluded that Claimant "retain[s] the ability to learn and perform simple, unskilled work-like activities." (Tr. at 337.)

At the administrative hearing, the ALJ's hypothetical questions to the vocational expert repeatedly specified jobs with SVP [Specific Vocational Preparation] Level 1 or 2 (that is, training consisting of a short demonstration only, or anything beyond a short demonstration up to and including one month).  (Tr. at 37-39.)  This is consistent with the ALJ's finding that Claimant has borderline intellectual functioning.  The ALJ further found that Claimant has mild restrictions in activities of daily living and maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.  (Tr. at 14.)  The ALJ gave little weight to Dr. Smith's opinion because she viewed it as "inconsistent with the record as a whole."  (Tr. at 17.)  The primary difference between the ALJ's finding and Dr. Smith's finding is Claimant's ability to maintain concentration, persistence or pace; the ALJ rated Claimant as having more difficulty in that regard.

The court finds that the ALJ's decision that Claimant did not meet Listing 12.05C as of January 9, 2009, is supported by substantial evidence.  All psychologists who have examined Claimant have concluded that he has borderline intellectual functioning, despite the 1977 Full Scale score.  Claimant operated heavy equipment in the timber industry for years, employment which requires judgment and skill.  It was within the ALJ's discretion and judgment to credit the 2008 IQ and other psychological tests over the 1977 test.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: April 27, 2012

Mary E. Stanley
United States Magistrate Judge